UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.              Case No. 18-CR-155

NICHOLAS O. NELSON,

    Defendant.

---

**ORDER DENYING MOTION FOR NEW TRIAL**

---

  On July 2, 2019, following a two-day trial, a jury found Defendant Nicholas O. Nelson guilty of one count of being a felon in possession of a firearm, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Nelson was sentenced to a term of sixty (60) months in the custody of the Bureau of Prisons. On appeal, Nelson's conviction was affirmed. *United States v. Nelson*, 958 F.3d 667 (7th Cir. 2020). The case is now before the Court on Nelson's motion for a new trial pursuant to Fed. R. Crim. P. 33. For the reasons that follow, Nelson's motion will be denied.

**BACKGROUND**

  The evidence at trial established that on February 26, 2017, police officers were called to investigate a report of suspicious vehicles in an office parking lot in the Village of Fox Crossing, Wisconsin. The responding officers encountered two vehicles: an unoccupied Mercedes with a flat tire and a Hyundai Sonata occupied by three people. Nelson had been driving the Mercedes when he got a flat tire a couple of days earlier, and Ashley Baring had borrowed the Hyundai from her roommate's father so that they could drive up from Milwaukee and pick it up after it was repaired. When police arrived, Nelson was in the driver's seat, Alexis Sullivan was in the front passenger seat, and Baring was in the backseat. Dkt. No. 70 at 11:09–13:17. After Nelson and

Sullivan initially provided officers with false names and officers noticed the smell of alcohol and marijuana emanating from the vehicle, a trained canine was deployed around the car's exterior. Transcript, Dkt. No. 69 at 66–69. The dog alerted on the rear driver's side of the vehicle, and based on the alert, officers searched the car and located marijuana as well as a loaded Springfield XD 40-caliber handgun that was wrapped in a sweatshirt on the floor behind but halfway under the front passenger seat. *Id*. at 76–77. All three occupants denied ownership or possession of the gun.

During the ensuing investigation, the gun was sent to the Wisconsin State Crime Laboratory to be analyzed for the presence of DNA. After the DNA analyst reported the presence of DNA on the gun, police obtained a search warrant for Nelson's DNA. *Id*. at 82. Upon comparison, the DNA analyst reported a match between Nelson's DNA and the DNA found on the trigger of the gun. *Id*. at 92–94. With this evidence in hand, Nelson was indicted for possession of a firearm by a felon. Attorney E. J. Hunt was appointed to represent him.

At trial, the defense offered an alternative explanation for how Nelson's DNA had gotten on the trigger of the gun found in the car in which they were riding. Both Nelson and Ashley Baring testified that they had engaged in sexual intercourse in the Hyundai before they left Milwaukee that morning. When they finished, they claimed, Nelson used Baring's sweatshirt to wipe himself off. Sometime later, they picked up Sullivan and proceeded to Fox Crossing to pick up Nelson's car. Along the way, Sullivan complained that she was cold and borrowed Baring's sweatshirt, the same sweatshirt Nelson had used to clean himself off. Baring testified that when Nelson was outside the vehicle being questioned by police, she saw Sullivan hide the gun in the sweatshirt Nelson had used to clean himself off earlier that day. She testified that that was the first time she saw the gun and denied seeing it while Nelson was in the car with them. Nelson

2

likewise denied ever seeing the gun or being told by Sullivan that she had it. Dkt. No. 70 at 21:05–20. Sullivan was not called by either the prosecution or defense to testify at trial.

The jury apparently did not believe the defense version of how Nelson's DNA had gotten on the trigger of the gun and returned a verdict of guilty. On September 26, 2019, Nelson was sentenced to 60 months in the Bureau of Prisons, to be followed by 3 years of supervised release. The Seventh Circuit Court of Appeals affirmed the sentence on May 11, 2020, and the final mandate was issued on June 2, 2020. Dkt. No. 72. On May 21, 2021, after retaining Attorney Chris Donovan, Nelson filed this motion seeking a new trial under Fed. R. Crim. P. 33 based on newly discovered evidence. The newly discovered evidence is set forth in an affidavit by Sullivan.

Sullivan states in her affidavit that the gun found in the car belonged to her. She states she had it concealed in her purse and did not show it to anyone or tell them about it before the police arrived. Sullivan states that after Nelson was removed from the car, she removed the gun from her purse, wrapped it in the sweatshirt she was sitting on, and placed it under the front passenger seat. She states that she lied to the police about her name and knowledge of the gun because she was on a pretrial diversion agreement at the time and did not want to get in trouble or arrested. According to Sullivan, she was later charged in state court with carrying a concealed weapon and obstructing an officer based on this incident. She pleaded guilty to the obstructing charge and paid a fine, with the understanding that the carrying a concealed weapon charge was dismissed and "read in." Dkt. No. 77-1.

A few weeks before Nelson's trial in federal court, Sullivan states she was arrested on unrelated charges and held in custody from June 23, 2019, until October 3, 2019. Sullivan states that she wrote a letter to Attorney Hunt after Nelson's trial but prior to his sentencing setting forth the same facts stated in her affidavit but never heard from him. A copy of the letter is attached to

3

her affidavit and is dated September 1, 2019. Attorney Donavon states he found the letter upon reviewing Attorney Hunt's file after Nelson retained him. Donavon then sent an investigator to confirm with Sullivan the letter's authenticity and obtain the affidavit that now forms the basis of Nelson's motion for a new trial.

## ANALYSIS

Federal Rule of Criminal Procedure 33(a) permits a district court to vacate any judgment and grant a new trial "if the interest of justice so requires." To show that the interest of justice requires a new trial, a defendant must provide evidence that (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013). However, "[b]ecause of the importance accorded to considerations of repose, regularity of decision-making and conservation of scarce judicial resources, courts exercise 'great caution' in setting aside a verdict reached after fully-conducted proceedings; this is particularly appropriate when, as here, the action has been tried before a jury." *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir. 1992) (footnotes omitted).

The need to exercise caution is especially acute in cases where the "newly discovered evidence" consists of a post-trial affidavit by a co-actor, who fails to testify at trial, that purports to exculpate the defendant of all liability. *See United States v. Lockett*, 919 F.2d 585, 592 (9th Cir. 1990) ("We agree with Judge Friendly's observation that 'a court must exercise great caution in considering evidence to be "newly discovered" when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify.'" (quoting *United States v. Jacobs*, 475 F.2d 270, 286 n.33 (2d Cir.), *cert. denied sub nom. Lavelle v. United States*, 414 U.S. 821 (1973))). Of course, in this case, Sullivan did not refuse to testify;

she was never called for reasons that remain unclear. Still, she indicates in her letter that she was charged with carrying a concealed weapon based on the same facts that led to the charge against Nelson and thus was, in effect, a co-defendant. Courts must take care to ensure Rule 33 motions for new trials do not become vehicles for manipulating the system of justice and undermining the finality of trials.

To warrant a new trial, the defendant must establish not only that the evidence came to his knowledge after trial but also that it could not have been discovered sooner had due diligence been exercised. *Kamel*, 965 F.2d at 490 (citing *Jarrett v. United States*, 822 F.2d 1438, 1445 (7th Cir. 1987)); *see also United States v. Robinson*, 585 F.2d 274, 278 (7th Cir. 1978) ("It is fundamental that a defendant seeking a new trial . . . must establish that the material asserted to be newly discovered could not have been discovered with due diligence before or during trial."). In this case, Nelson claims that the newly discovered evidence that entitles him to a new trial consists of Sullivan's May 12, 2021 affidavit and the attached September 1, 2019 letter to Attorney Hunt in which she takes full responsibility for the gun found in the car and explains why she believes Nelson had no knowledge that she had it. To the extent that both the letter and the affidavit reflect knowledge that Sullivan claims to have had since the inception of the case, it is questionable whether this is newly discovered evidence. The mere fact that Sullivan wrote down after the trial what she claims she saw at the time of the events in question does not make it newly discovered evidence. Otherwise, a defendant could make any version of events "newly discovered evidence" simply by asking a friend to write it down after the trial. Here, it is clear that Nelson knew that Alexis Sullivan was a witness to the events surrounding the discovery of the firearm he was charged with possessing on February 26, 2017. She was one of the two people in the car with him. Indeed, Nelson included Sullivan's name and address on the witness list he filed with the Court. Dkt. No. 38 at 2.

Moreover, Sullivan was not a stranger to Nelson. According to Baring's statement to police, Sullivan's relationship with Nelson was closer than Baring's was, which is consistent with the fact that Sullivan was seated in the front with Nelson on the ride up to Fox Crossing and Baring was in the rear of the car. Ex. 1013. Baring told police that Nelson and Sullivan were planning on going up from Milwaukee to get Nelson's car and she went along with them. *Id.* Moreover, Baring claimed she saw Sullivan hide the gun in Baring's sweatshirt after Nelson exited the car. Given these facts, it seems likely that Nelson knew at the time of trial, or should have known, that if he was not the owner/possessor of the gun, Sullivan knew who was.

Nelson has offered no evidence as to why the decision was made not to call Sullivan as a witness at trial. His new counsel argues in his reply that "any reason Attorney Hunt may offer for not calling [Sullivan] as a witness at trial would constitute ineffective assistance of counsel." Dkt. No. 82 at 4. This is because, counsel contends, "[i]t is exceedingly difficult, if not impossible, to conceive of any strategic reason why an attorney would not call a witness who admits to the acts constituting the crime for which his client is on trial facing serious penalties, and the government offers none." *Id.* But Sullivan was not facing the serious penalties Nelson was facing at the time of trial. Nelson was on trial for possession of a firearm by a felon, a federal crime carrying up to ten years in prison. 18 U.S.C. § 922(g)(1). Sullivan, who apparently had not been previously convicted of a felony, had a state misdemeanor charge of carrying a concealed weapon dismissed and "read in" as part of the disposition of the obstructing charge she pleaded guilty to in state court. In other words, claiming responsibility for the gun found in the car in which she was riding was not against her penal interest at the time of Nelson's trial. For this reason, the proposed testimony that Sullivan might have offered was not as powerful as Nelson claims. True, Sullivan's September 1, 2019 affidavit was made under oath. But the formerly common religious beliefs

about an afterlife that at one time gave statements made under oath significant weight no longer dominate our culture.

As to why the defense elected not to call Sullivan as a witness at trial, the Government suggested during argument on Nelson's motion that the defense may have made a strategic decision in response to the Government's pretrial notice of its intent to offer evidence of prior acts under Rule 404(b) of the Federal Rules of Evidence in the event Sullivan testified. Dkt. No. 27. According to the Government's notice, Sullivan had been arrested at a hotel in Rochester, Minnesota, for prostitution after an undercover law enforcement officer responded to an advertisement on the former website www.backpage.com and arranged to meet her for commercial sex acts. Law enforcement found Nelson in a vehicle in the hotel parking lot with another woman and a key holder matching the hotel room Sullivan was utilizing and a piece of paper with the phone number listed in the online advertisement written on it. *Id.* at 1–2; *see also* Presentence Investigative Report, Dkt. No. 51, at ¶ 46. The Government sought leave to cross-examine Sullivan about her arrest in Rochester and her relationship with Nelson to show bias in the event she testified. Attorney Hunt argued that the evidence was irrelevant and unduly prejudicial and that the Government's suggestion in offering such evidence that Nelson was Sullivan's "pimp" was without any factual basis. Dkt. No. 42 at 2–3. Ultimately, the issue became moot when Nelson elected not to call Sullivan as a witness. But the possibility, however slight, that such evidence could have become admissible if Sullivan took the stand might have offered a strategic reason for Attorney Hunt to decide to forego her testimony at trial.

This is especially true given the fact that Attorney Hunt was able to fully present his defense without Sullivan. Using a series of articles he had offered into evidence as learned treatises under Fed. R. Evid. 803(18), Attorney Hunt was able to explore with the DNA analyst who testified for the Government the phenomenon of indirect or secondary DNA transfer from one source to

7

Case 1:18-cr-00155-WCG   Filed 04/13/22   Page 7 of 9   Document 84

another object. Dkt. Nos. 24 & 69 at 94:20–110:02. This evidence, coupled with the testimony of Baring and Nelson concerning their sexual encounter in the car before driving up to Fox Crossing and Baring's account of how Sullivan wrapped the gun in Baring's allegedly semen-stained sweatshirt provided the basis for Attorney Hunt's argument that despite the presence of Nelson's DNA on the gun's trigger, he had never possessed it. Under these circumstances, the decision not to call Sullivan as a witness may well have been reasonable. In any event, Nelson's motion for a new trial is based on newly discovered evidence, not ineffective assistance of counsel. For the reasons set forth above, Nelson has failed to establish that the evidence offered by Sullivan is newly discovered in the sense that he neither knew nor in the exercise of reasonable diligence could have known about it before trial.

Nelson has also failed to demonstrate that the proffered newly discovered evidence "would probably lead to an acquittal in the event of a retrial." *Westmoreland*, 712 F.3d at 1072. Nelson was fully able to present to the jury the evidence needed to support his explanation for how his DNA ended up on the trigger of the gun found in the car he was driving. Sullivan's proffered testimony was essentially a recitation of the same testimony Baring had given — that Sullivan had retrieved the gun and hidden it in Baring's sweatshirt while Nelson was outside the car talking to police. The jury rejected the defense explanation, and there is no reason to believe a retrial would likely lead to a different result, especially in light of what Baring told police when asked about her sweatshirt before trial.

A Fox Crossing police investigator had interviewed Baring about the sweatshirt after he received the DNA analysis of the gun from the Crime Laboratory, specifically asking her if Nelson had ever handled it. Ex. 1013, Dkt. No. 70 at 18:21–19:07. At that time, Baring said that when they were leaving Milwaukee, Sullivan complained of being cold and asked if she could wear Baring's sweatshirt. Sullivan later took the sweatshirt off as they were driving up to Fox Crossing

and the vehicle warmed up. Ex. 1013 at Nelson_000158. Baring denied that anyone except Sullivan and she had worn the sweatshirt that day, and specifically denied that Nelson had handled it. The investigator asked Baring "if Nicholas Nelson would ever have handled the sweatshirt by putting it in a bag or picking it up." *Id.* According to the report, Baring "stated that with 100% certainty Nicholas Nelson has never put his hands on this sweatshirt." *Id.*

As the Court of Appeals noted with respect to Nelson's defense in affirming his conviction, "[t]he jury was entitled to reject this as a possible way in which his DNA made its way to the trigger of the gun." *Nelson*, 958 F.3d at 671. The Court also observed that "the evidence against him was strong." *Id.* at 672. The proffered testimony of Sullivan does not bear on the crucial issue of how Nelson's DNA got on the trigger, and thus, Nelson has failed to demonstrate that Sullivan's testimony would probably lead to a different result in the event of a retrial. For this reason, as well, Nelson's motion for a new trial must be denied.

In sum, Nelson has failed to demonstrate that Sullivan's proposed testimony constitutes newly discovered evidence or that a retrial would probably lead to a different result. His motion for a new trial pursuant to Fed. R. Crim. P. 33 (Dkt. No. 77) is therefore denied.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of April, 2022.

                                                            s/ William C. Griesbach
                                                            William C. Griesbach
                                                            United States District Judge